# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **KENETH CLARK,** | * |
| Plaintiff, | * |
| v. | *    Case No.: GJH-17-3748 |
| | * |
| **ACE AFSCME LOCAL 2250,** | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Keneth Clark alleges race discrimination, hostile work environment, retaliation, and Fair Labor Standards Act ("FLSA") claims against his former employer, Defendant Association of Classified Employees/American Federation of State, County and Municipal Employees Local 2250 ("Local 2250"). Defendant has filed a Motion for Summary Judgment. ECF No. 21. No hearing is necessary. See Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part.

## I.    BACKGROUND[1]

Plaintiff, a black male, began working for Defendant during the summer of 2012 to perform scanning and clerical work. ECF No. 22-1 ¶¶ 1-2. Plaintiff was paid by the hour, and was not given holiday pay, vacation leave, sick leave, or health benefits. ECF No. 21-2 ¶ 8. He typically worked forty hours or more each week. ECF No. 22-1 ¶ 2. Over time, Plaintiff took on additional job duties, including "clerical responsibilities, painting, setting up and staging rooms for meetings, maintenance tasks at the Union's building, maintaining and assisting with the

---

[1] Unless stated otherwise, the facts herein are undisputed or viewed in the light most favorable to the non-movant.

Union website, helping with membership databases and various 'as needed' or odd jobs." *Id*. ¶ 3. Plaintiff was supervised by James Spears, Defendant's Field Service Director. *Id*. ¶ 4. Plaintiff complained on "numerous" occasions about not receiving a full benefits package, and not being paid the appropriate hourly rate when working holidays, weekends, and overtime. *Id*. Plaintiff's complaints were not resolved during the tenure of his employment. *Id*. ¶ 5.

When Plaintiff was hired, Daniel Besseck served as Defendant's Executive Director. ECF No. 21-2 ¶ 6. But in October 2013, Besseck left this job and Wanda Twigg, a white female, replaced him. *Id*. ¶ 12. Plaintiff also complained to her about his lack of benefits, holiday pay, and overtime pay. ECF No. 21-1 ¶ 6.

Plaintiff contends that Ms. Twigg made several comments evincing "disdain and animus for African Americans." *Id*. ¶ 8. Plaintiff claims that on more than one occasion, she referred to largely Black groups of people as "you people" in a generalizing and disdainful way. *Id*; ECF No. 22-5 ¶ 6. Plaintiff also complains about other "rude and unprofessional" comments Ms. Twigg made to him. ECF No. 21-1 ¶ 9. In his deposition, Plaintiff explained that Ms. Twigg made "implied racial comments" on a "daily" basis. ECF No. 22-2 at 51.[2] He claims that she treated "the few white employees kinder and with less disgust and animus" than she treated the African-American employees. ECF No. 21-1 ¶ 9. A former member of Local 2250's Board has submitted an affidavit claiming that Ms. Twigg said that the majority-Black Board "acted like animals" and embarrassed her. ECF No. 22-5 ¶ 6. Plaintiff alleges that at some point Ms. Twigg gave one African-American employee a card with monkeys on the front. *See* ECF Nos. 22-1 ¶ 7, 22-5 ¶ 8. Defendant disputes this claim, explaining that the card in question was actually sent to Ms. Twigg by the employee. ECF No. 21-2 at 4-7.

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the exhibit and page numbers generated by that system.

Plaintiff also attributes various other offenses to Ms. Twigg: insubordination to the majority-Black Board—including hiring one white employee without its consent and refusing to discipline another white employee at the Board's request—that eventually cost her her job; attempting to fire another African American employee; and insulting the intelligence of two African Americans the Board appointed to an Insurance Committee. ECF Nos. 22-5 ¶¶ 5-7. Plaintiff says that he complained about Ms. Twigg's allegedly discriminatory conduct on multiple occasions, and that his employment was terminated soon after one of these complaints, despite the Board having directed Ms. Twigg to extend to him a benefits package. *Id*. ¶ 5; ECF No. 22-1 ¶ 11.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The burden is on the moving party to demonstrate that there exists no genuine dispute of material fact. *See Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). To defeat the motion, the nonmoving party must submit evidence showing facts sufficient for a fair-minded jury to reasonably return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Additionally, a party must be able to put facts to be considered in support of or opposition to a motion for summary judgment in an admissible form. *See Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 398, 407 (D. Md. 2015).

## III. DISCUSSION

Plaintiff claims Defendant discriminated against him on the basis of race, created a hostile work environment, and retaliated against Plaintiff for his Complaints, all in violation of 42 U.S.C. § 1981. Plaintiff also claims that Defendant failed to pay him overtime wages in violation of the FLSA, 29 U.S.C. § 207.

### A. Race Discrimination

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute defines the phrase "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The United States Court of Appeals for the Fourth Circuit has explained that a claim under § 1981 may lie in the context of an at-will employment relationship. *See Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018-19 (4th Cir. 1999) (noting that plaintiff's relationship with former employer, "though terminable at will, was contractual").

A plaintiff may establish a claim for race discrimination under § 1981 through one of two avenues of proof: by demonstrating through direct or circumstantial evidence that race was a motivating factor in the employer's adverse employment action, or by proceeding under a "pretext" framework by demonstrating that "the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). Under the latter framework, advanced by Plaintiff here, the plaintiff must make out a prima facie case by showing "(1) he is a

member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Defendant does not challenge Plaintiff's evidence on any of these elements.[3] Therefore, Plaintiff has established a prima facie case of discrimination.

Under this framework, the burden now "shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Holland*, 487 F.3d at 214. Defendant has met this burden by producing an affidavit stating that Plaintiff was terminated because his work was "absorbed by the Union's permanent staff." ECF No. 21-2 ¶ 15. Therefore, the burden shifts back to Plaintiff "to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." *Holland*, 487 F.3d at 215 (internal quotations omitted). Summary judgment is appropriate if "a plaintiff created only a weak issue of fact as to whether the employer's reasons were untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id*. A court must thus consider "the probative value of the proof that the employer's explanation is false." *Id*. (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)).

The evidence in the record before the Court is sparse. Defendant's only evidence of its stated reason for Plaintiff's termination—that his services were no longer necessary—is an

---

[3] Defendant asserts that Plaintiff must be able to demonstrate "different treatment from similarly situated employees outside of the protected class," *see* ECF No. 21-1 at 7. This standard applies to general allegations of disparate treatment, but not those alleging termination on the basis of race. *See Scott v. Health Net Fed. Servs., LLC*, 463 F. App'x 206, 208 (4th Cir. 2012) (stating different standards for prima facie cases of disparate treatment and wrongful termination).

affidavit submitted by Plaintiff's former supervisor. Plaintiff offers an affidavit from a former Local 2250 Board member stating that Ms. Twigg was directed by the Board to offer Plaintiff a permanent employment package, thus calling into question the legitimacy of Defendant's proffered explanation. Defendant counters with an affidavit attacking the reliability of Plaintiff's witness, as she had been forcibly removed from the Board of Directors. *See* ECF No. 23-1 ¶ 6. It is not for the Court to determine the reliability of these two witnesses and grant judgment based solely on their affidavits—therefore, summary judgment on Plaintiff's race discrimination claim must be denied.[4]

### B. Hostile Work Environment

A hostile work environment claim under 42 U.S.C. § 1981 is congruent with a hostile work environment claim under Title VII. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). That is, a hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To prevail on a hostile work environment claim, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Id*. (cleaned up). Defendant contends first that Plaintiff has not established that Ms. Twigg's alleged animosity towards him was based on racial discrimination,

---

[4] Though Defendant vigorously insists that Plaintiff has not proven he was a permanent, rather than temporary employee, that distinction makes no difference for the purposes of a race discrimination claim. Though an employee's temporary status may be evidence of the reason for termination, it is not dispositive, and a temporary employee may not be terminated on the basis of race. *See White v. Mortg. Dynamics, Inc.*, 528 F. Supp. 2d 576 (D. Md. 2007) (refusing to dismiss race discrimination claim brought by former temporary employee).

6

and second that Plaintiff's proffered evidence is insufficient to establish "severe or pervasive" conduct.

Regarding Defendant's first contention, Plaintiff has offered evidence that could lead a jury to infer that Ms. Twigg, in a wide range of scenarios, demonstrated animus towards black people, both as a group and specifically towards Plaintiff. Specifically, Plaintiff provides evidence that Ms. Twigg referred to black people as "you people" and said a majority-black Board of Directors acted like "animals," two well-known racially coded insults. *See* ECF No. 22-5 ¶ 6. Most notably, Plaintiff contends that Ms. Twigg posted a card with a monkey outside the door of an African-American employee. *See* ECF No. 22-1 ¶ 7. There can be no question that Section 1981 recognizes "dog-whistle" and coded racism just as much as it recognizes more explicit acts of racial animus. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (holding that the word "boy" may be evidence of racial animus depending on "various factors including context, inflection, tone of voice, local custom, and historical usage"); *Lloyd v. Holder*, No. 11CIV3154, 2013 WL 6667531, at *9 (S.D.N.Y. 2013) ("[C]ertain facially non-discriminatory terms can invoke racist concepts that are already planted in the public consciousness—words like 'welfare queen,' 'terrorist,' 'thug,' 'illegal alien.' Indeed, Title VII can hear racism sung in the whistle register."). Defendant, of course, disputes these inferences and the underlying facts as to whether Ms. Twigg even gave the employee the monkey card. A fact-finder may very well agree, but at the summary judgment stage of litigation, the Court must draw all inferences in favor of the non-moving party. What remains is a genuine dispute of material fact for the jury to decide.

As to Defendant's second argument, the "severe or pervasive" element of a hostile work environment claim "requires a showing that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive.'" *Id.* (quoting *Harris*, 510 U.S. at 22). This analysis is

"judged from the perspective of a reasonable person in the plaintiff's position." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). A court must look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). Hostile work environment claims often involve repeated conduct, but an isolated incident serious enough to amount to discriminatory changes in the terms and conditions of employment may also be sufficient to establish a claim. *Id.* "[A] supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *Id.* at 278 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998)).

Plaintiff has offered evidence that Ms. Twigg made "implied racial comments" on a "daily" basis, ECF No. 22-2 at 51, and that she posted a card outside the door of an African-American employee that invoked an odious racial trope; "suggest[ing] that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the merely unflattering; it is degrading and humiliating in the extreme." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001); *see also Boyer-Liberto*, 786 F.3d at 280 (holding that the use of the epithet "porch monkey" alone was sufficient to establish an abusive working environment). That these alleged actions were taken by a supervisor lends added weight to the conclusion that, if accepted by the finder of fact, they are sufficient to establish a hostile work environment.

### C. Retaliation

A plaintiff can prove illegal retaliation under § 1981 if he shows "(1) he engaged in protected activity, (2) he suffered adverse employment action at the hands of his employer, and

(3) employer took adverse action because of protected activity." *Bryant v. Aiken Reg. Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003). Defendant contends Plaintiff did not engage in protected activity, and, if he did, that its termination of Plaintiff was not because of this protected activity.

First, complaints about racial discrimination are protected activity as long as the employee "reasonably" believes the racial discrimination had occurred or was occuring. *See Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003); *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003). For the same reasons the Court denies summary judgment on the race discrimination and hostile work environment claims, the Court holds that there remains a genuine dispute as to whether Plaintiff "reasonably" believed that racial discrimination had occurred.

Second, Defendant disputes whether Ms. Twigg terminated Plaintiff's employment due to his complaints. A court may infer causation where the adverse employment action occurred in close temporal proximity to the protected activity. *See Strothers v. City of Laurel, Md.*, 895 F.3d 317, 336 (4th Cir. 2018). Plaintiff was terminated in February 2015, but the record contains no dates on which Plaintiff made any complaints. Plaintiff has only submitted an affidavit stating that he was terminated "not too long" after one of his complaints about Ms. Twigg. ECF No. 22-1 ¶ 11. The court cannot determine whether "not too long" is a short enough timespan to infer causation at the prima facie stage. Because Plaintiff's theory of causation for his retaliation claim rests solely on the basis of this temporal proximity, Plaintiff has not introduced evidence sufficient to establish a genuine dispute of material fact as to retaliation. *See, e.g., Strothers*, 895 F.3d at 337 (determining that the lapse of nine days was within the four-month window of time the Fourth Circuit has previously determined was sufficient to show causation at the prima facie stage).

9

D. FLSA

The FLSA generally requires that employers pay non-exempt employees one-and-a-half times their regular rate for each hour worked in excess of 40 per week. 29 U.S.C. §§ 207(a)(1), 213(a)(1). Plaintiff contends that he was a non-exempt employee who regularly worked more than 40 hours per week. FLSA claims are subject to a two-year statute of limitations for non-willful violations and a three-year statute of limitations for willful violations. *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011). Plaintiff's employment with the union ended on February 28, 2015. ECF No. 14 ¶ 12. Plaintiff's original Complaint was not filed until December 19, 2017. ECF No. 1. Therefore, if Plaintiff has not introduced evidence that, if believed, is sufficient to establish a willful violation of the FLSA, his claim is barred by the statute of limitations.

A willful violation of the FLSA is one in which the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Desmond*, 630 F.3d at 358. "[A]n employer's violation of the FLSA is not willful if it is the result of a 'completely good-faith but incorrect assumption that a pay plan complied with the FLSA.'" *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 772 (D. Md. 2014). However, "[r]eckless disregard of the requirements of the Act means failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

Defendant contends that Plaintiff's evidence is insufficient for a jury to conclude that any violation of the FLSA was willful. Plaintiff counters that he complained, repeatedly, to his supervisor concerning the failure to pay him overtime. ECF No. 21-2 ¶ 4. Courts have consistently found that employee complaints are relevant to a finding of willfulness. *See Garcia*

*v. Crossmark, Inc.*, 157 F. Supp. 3d 1046, 1054 (D.N.M. 2015) (prior complaints regarding employer policy were well within the range of reasonable evidence to support an inference of knowing or reckless behavior); *cf. Bradley v. Vox Media, Inc.*, 320 F. Supp. 3d 178, 183-84 (D.D.C. 2018) (holding that the combination of prior knowledge of related litigation and complains from employees were sufficient to state a claim for willfulness). Critically, Defendant makes no claim that it undertook even the most cursory investigation to determine if Plaintiff's complaints had any merit. While an employer is not required to seek a legal determination of its responsibilities under the Act, *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988), it must still make an "adequate inquiry," 5 C.F.R. § 551.104. This is especially so because Plaintiff's exemption claim is a relatively straightforward one involving settled questions of law, unlike other claims where courts have denied a finding of willfulness due to the complexity of the exemption question. *See Perez v. Mountain Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011) (holding that employer's violation was not willful where there was no binding authority addressing the legal issue at question); *Mould*, 37 F. Supp. 3d at 772 (denying a finding of willfulness where Plaintiffs did not understand the preconditions required to pay tipped employees less than the federal minimum wage). Because Defendant has offered no evidence of any inquiry whatsoever, a genuine dispute of material fact precludes summary judgment on the applicable limitations period.[5]

---

[5] Defendant's Motion for Summary Judgment raised only this limitations defense, to which Plaintiff offered a response that included copies of two pay stubs indicating greater than forty hours of work. ECF No. 22-4. In its Reply Brief, Defendant seems to suggest, for the first time, that Plaintiff's evidence is insufficient to establish that he worked more than forty hours in any given week. Recognizing that Plaintiff must still carry the burden of proof at trial, the Court will not consider this argument at this time.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment, ECF No. 21, is granted as to Plaintiff's Retaliation claim and denied as to Plaintiff's remaining claims. A separate Order shall issue.

Date: <u>August   15 , 2019</u>                              /s/_____
                                                                                GEORGE J. HAZEL
                                                                                United States District Judge