IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **KENETH CLARK,** | * | |
| Plaintiff, | * | |
| v. | | Case No.: GJH-17-3748 |
| | * | |
| **ACE AFSCME LOCAL 2250,** | | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this action, a jury returned a verdict in Plaintiff Keneth Clark's favor against Defendant ACE AFSCME Local 2250 based on violations of 42 U.S.C. § 1981. ECF No. 53. Presently pending before the Court is Plaintiff's Motion for Back Pay, Front Pay, and Other Relief, ECF No. 56. A damages hearing was held on November 1, 2021. ECF No. 61. For the following reasons, Plaintiff's Motion is granted in part.

**I.   BACKGROUND**

On August 2, 2021, a jury returned a verdict in favor of Plaintiff finding that Defendant, ACE AFCME Local 2250 ("the Union"), discriminated against Plaintiff by terminating him because of his race and by subjecting him to a hostile work environment because of his race in violation of 42 U.S.C. § 1981. ECF No. 53. The jury awarded Plaintiff $50,000 in compensatory damages and $150,000 in punitive damages. *Id.* The jury also found that Defendant failed to pay Plaintiff overtime rates for hours worked in excess of 40 per week. *Id.*

On August 30, 2021, Plaintiff filed the instant Motion for Back Pay, Front Pay, and Other Relief, ECF No. 56, seeking final judgment in the amount of $446,983.28 including, in addition

to the amounts awarded by the jury, the following: (1) back pay totaling $195,884.79, (2) front pay totaling $50,990.86, and (3) $107.63 in overtime. ECF No. 56 at 6.[1] Defendant responded on September 13, 2021, ECF No. 60. A damages hearing was held on November 1, 2021, ECF No. 61, and the Court invited the parties to provide supplemental briefing within one week. *Id.* Plaintiff submitted supplemental briefing on November 8, 2021, ECF No. 62.

## II.   DISCUSSION

In the pending motion, Plaintiff seeks back pay and prejudgment interest, front pay, and overtime pay. ECF No. 56 at 2. The Court will address each category of requested relief below.

### A.  Back Pay and Prejudgment Interest

Plaintiff seeks an award of $195,884.79 in back pay and prejudgment interest. ECF No. 56 at 4. Defendant argues that Plaintiff should be denied backpay entirely because he failed to mitigate his losses. *See* ECF No. 60 at 2–4.

"In calculating a dollar amount for a back pay award, the Court aims 'to make the victims of unlawful discrimination whole,' and restore them 'so far as possible . . . to a position where they would have been were it not for the unlawful discrimination.'" *Warren v. Main Indus. Inc.*, No. 4:16-cv-181-RAJ-LRL, 2018 WL 265575, at *3 (E.D. Va. Jan. 2, 2018) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S. Ct. 2362, 2373, 45 L. Ed. 2d 280 (1975)). In employment discrimination cases, a plaintiff who is unable to find comparable work is "generally entitled to back pay as a matter of course . . . unless the defendant comes forward with evidence that the plaintiff did not exert reasonable efforts to mitigate [his] damages." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995) (internal quotations and citations omitted). The "improperly dismissed employee may not remain idle and recover lost

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

wages from the date of discharge. The employee must make a reasonable effort to find other suitable employment." *Edwards v. Sch. Bd. of City of Norton, Va.*, 658 F.2d 951, 956 (4th Cir. 1981) (citing *O'Neal v. Gresham*, 519 F.2d 803, 805 (4th Cir. 1975)). Once the improperly dismissed employee "produces evidence in support of [his] claim for back pay, contending that he was unable to find comparable work, the employer has the burden of showing that [he] did not exert reasonable efforts to mitigate [his] damages." *Id.* "To make the plaintiff whole, the award of back pay should be the difference between what the employee would have earned had the wrongful conduct not occurred from the period of termination to judgment, and the actual earnings during that period." *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 389 (D. Md. 1997) (citing *Horn v. Duke Homes*, 755 F.2d 599, 606 (7th Cir. 1985)).

At trial, Plaintiff introduced evidence of his past earnings, specifically that he made $20.50 an hour and that he normally worked forty (40) hours per week, ECF No. 64 at 81:14–23; ECF No. 56 at 4; ECF No. 49 at 1 (Plaintiff's exhibit list identifying Plaintiff's payroll journal as entered into evidence), and Plaintiff testified regarding his attempts to find comparable employment since his termination.

In recognizing that a plaintiff's performance of "odd jobs . . . demonstrate[d] his efforts to find work after [the termination,]" the Fourth Circuit held that "[o]btaining a part-time job in another field satisfies Plaintiff's obligation to mitigate damages absent a showing by [the employer] that this action was not in good faith." *Ford*, 984 F. Supp. at 390. This is precisely what Plaintiff did. At trial, Plaintiff testified that after his termination in February 2015, he was unable to immediately find work, and he explained that this occurred "right before spring break, so [he] didn't have any substitute jobs available," therefore he "did some yard work for some neighbors because [he] had to keep money coming in somehow." ECF No. 64 at 63:10–18.

Further, he testified that following spring break, he secured a position as a substitute teacher for two to three days a week before summertime, and that, the following school year, he "was made a long-term sub and [he] did that for two years," after which time he secured a position as a co-teacher at an elementary school, which eventually became a "full-time para position." *Id.* at 63:22–64:4.

Moreover, during his deposition, Plaintiff testified that, in addition to the aforementioned substitute teaching position, he worked at Bed, Bath, & Beyond for the 2017 Christmas season, for which he made $10 an hour for a total of $500 or $600 from November 2017 through January 2018. ECF No. 60-1 at 61:21–62:18. Regarding his efforts to find a job, Plaintiff testified that he "applied to several schools in the District of Columbia and Prince George's County and Fairfax and Loudon and Baltimore City" and that he had "been on the Indeed website and also just use[d] the newspaper to call places." *Id.* at 62:19–63:3. Plaintiff testified that he believes he found his seasonal position at Bed, Bath & Beyond on Indeed, that he looked for jobs every day, and that, at the time of the deposition, he was "still looking for a job now, full time." *Id.* at 63:4–18. Based upon this testimony, the Court is convinced that Plaintiff satisfied his obligation to mitigate damages, and absent any showing by Defendant that his steps to secure these various part-time employment opportunities were not in good faith, the Court will not deny Plaintiff an award of back pay. *See Ford*, 984 F. Supp. at 390. Plaintiff's award of back pay, however, will be limited to the period of March 1, 2015 to August 2, 2021, not September 30, 2021, as requested by Plaintiff, *see* ECF No. 56 at 4. Where, as here, the parties agreed to defer entry of judgment pending the resolution of back and front pay issues, *see* ECF No. 67 at 121:20–124:16, "the Court considers the date of 'judgment' to be the date of the jury's verdict" for purposes of

calculating backpay. *Ford*, 984 F. Supp. at 391 n.3. Because the jury returned its verdict on August 2, 2021, ECF No. 53, this is the appropriate date of judgment for the Court's calculation.

      Here, the Court has sufficient evidence to calculate Plaintiff's back pay award. The parties agree that Plaintiff's last rate of pay before his termination was $20.50 per hour, *see* ECF No. 60 at 5; ECF No. 56 at 4, however, Defendant disagrees with Plaintiff's argument that his back pay calculation should be based on a forty hour work week, every week since his termination and through the date of the jury's verdict. *See* ECF No. 60 at 5. Specifically, Defendant argues that Plaintiff's back pay calculation "entirely ignores the impact of the COVID-19 global pandemic on his Employer's operations" and further contends that he would have been laid off at some point after the pandemic began. *Id.* Thus, Defendant argues that Plaintiff's back pay period should be reduced by one year to "conservatively account for the work that Mr. Clark would not have performed during this time," and further requests that fourteen annual holidays be deducted from Plaintiff's backpay period because Plaintiff was given those holidays off and Defendant's office was closed. *Id.* at 6; ECF No. 60-2 at 10–11.

      Plaintiff has submitted unrefuted evidence that he worked on holidays or worked full time during weeks with holidays, *see* ECF Nos. 62-1 & 62-2. Additionally, Defendant's claims regarding COVID-19 are speculative and not supported by evidence. Therefore, the Court will not reduce the period of Plaintiff's back pay due to the COVID-19 pandemic or annual holidays. The Court calculates Plaintiff's award, at a rate of $20.50 per hour, forty hours per week, from March 1, 2015, through the date of the jury's verdict, August 2, 2021, with no reductions for holidays or COVID-19, to be $273,634.00. Subtracting Plaintiff's actual earnings during this period, based on Plaintiff's submitted W2's for each year, of $113,154.21, leaves Plaintiff with a total back pay award of $160,479.79.

Plaintiff also seeks prejudgment interest on his award of back pay. *See* ECF No. 56 at 3–4. District Courts have the discretion to award prejudgment interest on any back pay award. *Ford*, 984 F. Supp. at 391 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416–17, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975)). "An award of interest ensures that inflation does not consume the value of a back pay award, and ensures that a discriminating employer does not reap an unfair benefit from the inherent delays of litigation." *Ford*, 984 F. Supp. at 391 (internal quotations and citations omitted). "The decision to award interest turns on whether the amount of damages is easily ascertainable." *Id.* (internal citation omitted). Here, the Court has already calculated Plaintiff's back pay award of $160,479.79, based on evidence in the trial record and documents provided by Plaintiff in support of his Motion. Moreover, that Plaintiff did not specifically request prejudgment interest in his original or Amended Complaint, *see generally* ECF Nos, 1 & 14, is not dispositive because, in the Amended Complaint, Plaintiff "requests other and further relief as justice may require," ECF No. 14 ¶ 25. Thus, the Court will exercise its discretion and award prejudgment interest. *See Ford*, 984 F. Supp. at 391.

In determining the amount of prejudgment interest owed on Plaintiff's award of back pay, however, Defendant is correct that any prejudgment interest should be calculated based on the back pay award—meaning the difference between what Plaintiff would have earned during the relevant time period minus what he, in fact, earned—and not the gross back pay amount without any offset for Plaintiff's earnings. *See id.* at 389; *see also* ECF No. 60 at 7. This Court has previously explained that "[a]n appropriate method to calculate prejudgment interest is to compound the total amount of back pay for the period between Plaintiff's termination from [the employer] and the date of the jury's verdict, at an interest rate corresponding to the average inflation rate for that time period." *Ford*, 984 F. Supp. at 391. Specifically, this Court, in *Ford,*

"employed the following compound interest formula: $F = P [1 + (i/12)]\ m$. Where F = future value of money (total of principal and interest), P = principal (back pay award), i = interest rate expressed as a decimal, and m = number of months compounded." *Warren*, 2018 WL 265575, at *4 (citing *Ford*, 984 F. Supp. at 392).

In this case, the back pay is compounded for the seventy-seven (77) months between Plaintiff's termination and the date of the jury's verdict. The Court will use a .0238% rate of interest, based on the approximate average interest rate during the time period.[2] Using the formula set forth in *Ford*, the Court will award a total of $186,929.85 in back pay damages, inclusive of prejudgment interest. *See Warren*, 2018 WL 265575, at *4 (using *Ford* formula to calculate back pay damages with prejudgment interest); *Mohammed v. Cent. Driving Mini Storage, Inc.*, 128 F. Supp. 3d 932, 956 (E.D. Va. 2015) (same).

## B. Front Pay

Plaintiff seeks an award of two years front pay, totaling $50,990.86. ECF No. 56 at 6. Defendant argues that Plaintiff should be denied any amount of front pay because it is both speculative and unavailable in this case. *See* ECF No. 60 at 2, 9.

"The equitable remedy of front pay is generally available when an employer has terminated an employee unlawfully and the employee's reinstatement is not possible." *Loveless v. John's Ford, Inc.*, 232 Fed. App'x. 229, 238 (4th Cir. 2007) (citing *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1423 (4th Cir. 1991)). "Front pay is designed to place a plaintiff in the financial position he would have been in had he been reinstated." *Id.* (citing *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 862 (7th Cir. 2001)). "After a finding of wrongful discharge, reinstatement, not

---

[2] The Court used the Consumer Price Index maintained by the U.S. Bureau of Labor Statistic to determine the average rate of inflation from 2015 to 2021. *See* U.S. Bureau of Labor Statistics, Consumer Price Index Historical Tables for U.S. City Average: Consumer Price Index for All Urban Consumers (CPI-U), (last visited May 4, 2022), https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_us_table.htm.

front pay, is the preferred equitable remedy." *Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538, 562 (4th Cir. 2018) (citing *Duke*, 928 F.2d at 1423).

"Reinstatement and/or front pay, like back pay, is an equitable, discretionary remedy within the province of the Court." *Ford*, 984 F. Supp. at 392 (citing *Patterson v. American Tobacco Co.*, 535 F.2d 257, 269 (4th Cir.1976)). Notwithstanding, however, "the desirability of reinstatement, intervening historical circumstances can make it impossible or inappropriate." *Duke*, 928 F.2d at 1423. For example, the Fourth Circuit has "recognized that courts have reasonably declined to award reinstatement when 'the employer has demonstrated such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible . . . [and] when the litigation itself created such animosity between the parties that any potential employer-employee relationship was irreparably damaged.'" *Hunter*, 897 F.3d at 562 (quoting *Duke*, 928 F.2d at 1423). Due to the potential for windfall, the Fourth Circuit has instructed that the use of front pay must be "tempered." *Duke*, 928 F.2d at 1423.

The "infinite variety of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages." *Duke*, 928 F.2d at 1424. Accordingly, "[t]here is no bright line test for awarding front pay." *Hunter*, 897 F.3d at 562 (internal quotations and citation omitted). Nonetheless, any method of calculation "necessarily 'requires an analysis of all the circumstances existing at the time of trial for the purpose of tailoring a blend of remedies that is most likely to make the plaintiff whole.'" *See Hunter*, 897 F.3d at 563; *Duke*, 928 F.2d at 1423. In holding that the district court reasonably exercised its discretion in calculating a plaintiff's front pay award, the *Hunter* court recognized the various non-exclusive factors relevant to calculating a front pay award including:

> [P]laintiff's age; the length of plaintiff's employment with the defendant-employer; the likelihood that plaintiff's employment would have continued absent the discrimination;

8

the length of time it would take plaintiff to secure comparable employment using reasonable efforts; plaintiff's work and life expectancy; the typical length of time other employees held the position lost; plaintiff's status as an at-will employee; plaintiff's ability to work, including the ability to work for the defendant-employer; plaintiff's subjective intention to remain in the position; and plaintiff's efforts to mitigate damages.

*Hunter*, 897 F.3d at 563. The Fourth Circuit also explained that the district court then analyzed a variety of these factors and drew reasonable conclusions in support of its calculation. This Court will do the same.

Here, the Court finds that reinstatement is not an appropriate remedy given the nature of Plaintiff's claim, the time that has elapsed since Plaintiff was terminated in 2015, the facts developed at trial, and the fact that Defendant has not offered Plaintiff his job back. *See Warren*, 2018 WL 265575, at *4 (E.D. Va. Jan. 2, 2018).[3] And considering that the goal of front pay is to place Plaintiff in the financial position he would have been in had he been reinstated, *see Loveless*, 232 Fed. App'x. at 238, the Court finds that two years of front pay is appropriate. Plaintiff provides that he is fifty years of age, *see* ECF No. 56 at 5, and, at this age, it is reasonable for the Court to conclude that Plaintiff will likely be able to continue working for many years. Plaintiff's "relative youth therefore weighs against an extended front pay award." *Hunter v. Town of Mocksville*, 201 F. Supp. 3d 750, 762 (M.D.N.C. 2016); *see also Foit v. Suburban Bancorp*, 549 F. Supp. 264, 267 (D. Md. 1982) ("[T]he plaintiff's argument that at age 49 his number of employable years is limited is somewhat hard to swallow.").

Conversely, however, the likelihood that Plaintiff's employment would have continued absent the discrimination weighs in favor of an award of front pay. The evidence presented at trial revealed that Plaintiff, who had been employed with Defendant for three years, *see* ECF No.

---

[3] The Court notes here that in response to Defendant's objections to front pay, the Court invited Defendant to indicate if Plaintiff's job was still available to him such that reinstatement could be ordered as a remedy. It has not done so. ECF No. 62 at 2 ¶ 4.

9

64 at 29:9–11, was in the process of receiving a "package" to include benefits including health and dental insurance, as well as paid holidays and sick days, *see* ECF No. 64 at 58:7–25, 59:19–60:8, 62:16–63:9; ECF No. 65 at 181:19–182:20; 182:21–183:19. This indicates to the Court that, absent Plaintiff's termination, Defendant intended to retain Plaintiff as a full employee for some period of time, and this weighs in favor of an award of front pay.

    The length of time other employees held the position also weighs in favor of an award of front pay. At trial, Plaintiff testified that after being informed of his termination, he spoke with "the receptionist," whom he identified to be Lisa Clemons. *See* ECF No. 65 at 129:18–21, 80:3–10. Plaintiff later testified that Ms. Clemons had insurance benefits, and Plaintiff testified that the individuals who did the same work that he did full time had health insurance benefits, while Plaintiff did not. *See* ECF No. 65 at 135:10–24. Ms. Clemons, who also testified at trial, stated that her position was now "membership specialist benefits coordinator" and that she had been employed by Defendant for twenty-two years. ECF No. 67 at 27:8–15. That Ms. Clemons, another individual who shared at least some duties with Plaintiff at the time of his employment with Defendant, was employed for twenty-two years, a considerably long duration, is a consideration that also weighs in favor of an award of front pay. *See Hunter*, 201 F. Supp. at 759. Additionally, the Court has previously found that Plaintiff mitigated his damages by securing alternative employment, which further weighs in favor of an award of front pay. *See also Ford*, 984 F. Supp. at 389; *Hunter*, 897 F.3d at 563.

For all of the following reasons, the Court finds that an award of two years front pay, totaling $50,990.86, is appropriate.[4] *See e.g., Dominic v. Consol. Edison Co. of New York,* 822 F.2d 1249, 1258 (2d Cir. 1987) (upholding award of two years of front pay).

### C. Overtime Pay

At trial, the jury found that Defendant failed to pay Plaintiff for overtime or hours worked in excess of 40 hours a week after December 14, 2014. ECF No. 53. Plaintiff, therefore, seeks an award for overtime worked from the period between December 14, 2014 and his termination. *See* ECF No. 56 at 6. Specifically, Plaintiff claims that he worked a total of 3.5 hours of overtime during this period such that he is owed, based on his pay rate of $20.50, $107.63. *Id.* Defendant agrees that this is the proper award for Plaintiff's unpaid overtime, *see* ECF No. 60 at 2 n.1. Therefore, the Court will award Plaintiff a total of $107.63 in unpaid overtime.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Back Pay, Front Pay, and Other Relief, ECF No. 56, is granted. Judgment will be entered in a total amount of $438,028.34.

Date: May 11, 2022

/s/
GEORGE J. HAZEL
United States District Judge

---

[4] Defendant challenges the award of front pay but not Plaintiff's calculation, which he calculates as the sum of his annual earnings over two years less the average of his earnings from time of termination to judgment. ECF No. 56 at 6.

Further, that Plaintiff "has already found new employment and has moved on," as Defendant argues, ECF No. 60 at 12, does not preclude this Court from exercising its discretion to award front pay, as Plaintiff only receives the difference between what he would have earned for the two years and the average of what he actually earned from the time of his termination through the jury's verdict.