IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| KENETH CLARK, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-17-3748 |
| ACE AFSCME LOCAL 2250, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this action, a jury returned a verdict in Plaintiff Keneth Clark's favor against Defendant ACE AFSCME Local 2250 ("the Union" or "Defendant") based on violations of 42 U.S.C. § 1981. ECF No. 53. Pending before the Court is Defendant's Motion for Judgment Notwithstanding the Verdict, or in the Alternative Motion for a New Trial, ECF No. 74.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's motion is denied.

**I.    BACKGROUND**

On August 2, 2021, a jury returned a verdict in favor of Plaintiff finding that Defendant discriminated against Plaintiff by terminating him because of his race and by subjecting him to a hostile work environment because of his race in violation of 42 U.S.C. § 1981. ECF No. 53. The jury awarded Plaintiff $50,000 in compensatory damages and $150,000 in punitive damages. *Id.*

---

[1] Also pending before the Court are Defendant's Motions to Withdraw as Attorney, and to Stay Execution of the Judgment Pending Post-Trial Motions and Appeal and to Approve Supersedeas Bond, ECF Nos. 73 & 76, which are granted; and Plaintiff's Motion for Extension of time to File Response to Defendant's reply to Plaintiff's Motion for Attorney Fees, ECF No. 79, which is granted, and the Plaintiff shall have seven days from the filing of this Order to submit his response.

1

The jury also found that Defendant failed to pay Plaintiff overtime rates for hours worked in excess of 40 hours per week. *Id.*

On August 30, 2021, Plaintiff filed a Motion for Back Pay, Front Pay, and Other Relief. ECF No. 56. The Court held a damages hearing on November 1, 2021, ECF No. 61, and invited the parties to provide supplemental briefing within one week. Only the Plaintiff submitted supplemental briefing on November 8, 2021. ECF No. 62.

On May 11, 2022, this Court entered judgment in favor of Plaintiff and against the Defendant in the total amount of $438,028.34; with $50,000 in compensatory damages, $150,000 in punitive damages, $186,929.85 in back pay and prejudgment interest, $50,990.86 in front pay, and $107.63 in overtime pay.

## II.   STANDARD OF REVIEW

A motion for judgment notwithstanding the verdict or alternatively for a new trial is reviewed under Federal Rules of Civil Procedure 50 and 59, respectively. Judgment under Rule 50 is warranted "only 'if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.'" *De Simone v. VSL Pharm., Inc.*, 395 F. Supp. 3d 617, 622 (D. Md. 2019) (quoting *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249 (4th Cir. 1996)). In determining whether the nonmoving party has carried its burden as a matter of law, the district court "may not substitute [its] judgment for that of the jury or make credibility determinations." *Price*, 93 F.3d at 1249. The Court must "view the evidence in the light most favorable to the nonmoving party and draw legitimate inferences in its favor." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992). Thus, "if there is any evidence on which a reasonable jury could return a verdict in favor of the nonmoving party, the court must deny a Rule 50 motion." *Price*, 93 F.3d at 1249–50. The Court is to determine

whether "the evidence presented, combined with all permissible inferences ... provide[s] a legally sufficient basis for a reasonable to jury to find" in favor of the nonmoving party. *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020). Rule 50(b) notes that a party "may include an alternative or joint request for a new trial under Rule 59."

"The standard for granting a Rule 59 motion is still a high bar." *Qiydaar v. People Encouraging People, Inc.*, No. CV ELF-17-1622, 2021 WL 2260286, at *6 (D. Md. June 3, 2021), *aff'd*, No. 21-1734, 2022 WL 2965654 (4th Cir. July 27, 2022). Under Rule 59, a district court may set aside a verdict and grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Id.* (quoting *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014)).

### III. DISCUSSION

In support of its motion, Defendant argues that the front pay award is unsupported by the evidence, the award of punitive damages must be reduced or eliminated, and that they are entitled for judgment notwithstanding the verdict or for a new trial. ECF No. 74-1 at 2, 9.[2] The Court will address each argument in turn.

#### A. Front Pay

Defendant argues that the award of front pay is unsupported by the evidence and is inappropriate when reinstatement to the prior position is available. ECF No. 74-1 at 4. Defendant seemingly ignores the hearing the Court held on November 1, 2021, when the Court asked the Defendant if they were prepared to reinstate Plaintiff, and the Defendant declined to provide an answer. Furthermore, the Court also gave both parties a week to submit supplemental briefing to

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

the Court in which the Defendant had yet another opportunity to inform the Court that they were prepared to offer Plaintiff a job, and they failed to do so. For Defendant to now argue that "reinstatement was available" is unconvincing. *See also* ECF No. 68 at 9–11 (stating additional reasons why the front pay award was the appropriate remedy). As such, this Court will deny Defendant's motion to revisit Plaintiff's front pay award.

### B. Punitive Damages

Defendant next argues that the punitive damages award is excessive and contrary to justice and must be diminished or eliminated. ECF No. 74-1 at 6. "Punitive damages are limited to cases in which the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529–30 (1999) (internal quotations omitted). "The terms 'malice' and 'reckless' ultimately focus on the actor's state of mind," and "pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535. "While egregious misconduct is evidence of the requisite mental state, § 1981a does not limit plaintiffs to this form of evidence, and the section does not require a showing of egregious or outrageous discrimination independent of the employer's state of mind." *Lowery v. Cir. City Stores, Inc.,* 206 F.3d 431, 441–42 (4th Cir. 2000) (quoting *Kolstad,* 527 U.S. 526, 536). "If it cannot be said that a principal of the employer actually engaged in the discriminatory conduct at issue, the plaintiff must offer evidence sufficient to impute liability for punitive damages from the individual who did so engage to the employer." *Id.* at 442 (quoting *Kolstad,* 527 U.S. 526, 539). The Court finds that the punitive damages award was justified and is not excessive or contrary to justice.

1. **Punitive Damages Were Justified**

> For a punitive damages award to be justified on the basis of reckless indifference the evidence must be sufficient for a reasonable jury to find: (1) [t]hat the employer's decision maker discriminated in the face of a perceived risk that the decision would violate federal law; (2) [t]hat the decision maker was a principal or served the employer in a managerial capacity; (3) [t]hat the decision maker acted within the scope of his employment in making the challenged decision; and (4) [t]hat the employer failed to engage in good-faith efforts to comply with the law.

*E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 372 (4th Cir. 2008).

There was sufficient evidence for a reasonable jury to find that Ms. Twiggs discriminated in the face of a perceived risk that her actions would violate federal law. Among other testimony, Plaintiff testified that the executive director of the Union, Ms. Twigg, treated the black employees differently by making derogatory comments to them, calling the black employees' "you people" and other demeaning names while always referring to the white employees and board members by their names. Plaintiff stated that Ms. Twigg allowed white members to come into her office but never the black members. Plaintiff stated that he complained about the conduct of Ms. Twigg to Mr. Spears, the field service director, on more than one occasion and was simply told "he would be alright." ECF No. 64, Transcript of Jury Trial Proceedings, at 37–51. The jury also heard evidence from Shirley Kirkland, an executive board member of the Union and the president during the time in which Plaintiff was employed. Ms. Kirkland testified that Ms. Twigg would refer to black members, even on the board, as "animals," "idiots," "you people," or "you folk." ECF No. 65 at 162. Additionally, according to Ms. Kirkland, Ms. Twigg would require black members to make appointments to see her while maintaining an open-door policy for white members. *Id*. at 168. Ms. Kirkland also stated that Ms. Twigg was reprimanded in writing several times for her discriminatory conduct. *Id.* at 229:17–32. Finally, Ms. Twigg acknowledged that the term "you people" can be considered racially derogatory. ECF No. 66,

Transcript of Jury Trial Proceedings, at 226, 284. Thus, the evidence was sufficient for a reasonable jury to find that Ms. Twigg was aware that she was acting in violation of federal law. *See Lowery*, 206 F.3d at 443 (holding that a reasonable juror could infer that the decision maker had knowledge of anti-discrimination laws from evidence that there was mandatory week-long seminar that included education on the anti-discrimination laws).

There was also sufficient evidence for a jury to find that the second and third prongs were met. Ms. Twigg was the executive director of the Union and she testified that she handled the day-to-day operations of the organization; and that the board of directors were her supervisors. She stated that it was her job to oversee the eleven employees employed at the Union at the time. ECF No. 66, Transcript of Jury Trial Proceedings, at 222, 225. As evidenced above, Plaintiff and Ms. Kirkland testified that Ms. Twigg acted in a discriminatory fashion towards black employees in her capacity as executive director. Ms. Twigg also fired Plaintiff in her capacity as executive director and Ms. Kirkland testified that Ms. Twigg stated she did this because she had the authority to do so. Based on this testimony, it was reasonable for a jury to find that Ms. Twigg was a principal or someone who served in a managerial capacity, and that she was acting within the scope of her employment when she made the decision to terminate Plaintiff.

Finally, there was sufficient evidence for a jury to find that the employer failed to engage in good-faith efforts to comply with the law, satisfying the fourth prong. The "good-faith exception rests on the notion that the existence and enforcement of an anti-discrimination policy shows that the employer itself never acted in reckless disregard of federally protected rights." *Lowery*, 206 F.3d at 445 (internal quotation marks and citation omitted). Plaintiff testified that he did not receive any training on anti-harassment or discrimination policies and that he has never seen documentation that reflects the Union's employment discrimination or antiharassment

policies. ECF No. 64, Transcript of Jury Trial Proceedings, at 29. He also states that no executive director or supervisor ever told him what he was supposed to do if he believed he had been subjected to racial or other harassment. ECF No. 65, Transcript of Jury Trial Proceedings, at 141–42. Ms. Kirkland testified that the training the executive board received was related to matters other than employment discrimination policies. *Id.* at 211. The evidence presented at trial was thus sufficient for a reasonable jury to conclude that the Union failed to make a good-faith effort to comply with the law. As such, the punitive damage assessment was not in error and the Court will deny Defendant's motion to eliminate them.

### 2. Punitive Damages were not Excessive or Contrary to Justice

"A punitive damages award is subject to review for compliance with the procedural and substantive constitutional limitations of the Due Process Clause of the Fifth Amendment, lest a grossly excessive award of such damages effect an arbitrary deprivation of property." *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d at 376.

> In determining the constitutionality of a punitive damages award, we are obliged to adhere to three 'guideposts' identified by the Supreme Court in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996): (1) the degree of reprehensibility of the defendant's conduct; (2) any disparity between the actual or potential harm suffered by the plaintiff and the amount of the punitive award; and (3) any difference between the award and civil penalties that are authorized or imposed in comparable cases.

*Id.*

> Reprehensibility is the first and most important of the three *BMW* guideposts. We are obliged to assess a reprehensibility issue on the basis of five factors: (1) whether the harm done was physical as opposed to economic; (2) whether the conduct involved indifference to the health or safety of others; (3) whether the victim was financially vulnerable; (4) whether the conduct involved repeated actions or was isolated; and (5) whether the harm suffered by the plaintiff resulted from conduct that was known or suspected to be unlawful.

*Id.* at 376–77 (quoting *BMW*, 517 U.S. at 576–77). The first *BMW* guidepost, the degree of reprehensibility falls in favor of the Plaintiff. Looking at the third factor in the reprehensibility analysis, financial vulnerability, Plaintiff testified that he could not get a job at the time he was terminated, he had to do yardwork for some neighbors; he also stated that he was able to get "maybe" two or three days of work a week as a substitute teacher, and that he had never gotten to a point where he made as much as he was making at the time he left the union. ECF No. 64, Transcript of Jury Trial Proceedings, at 63–64. As to factors four and five, Plaintiff testified that Ms. Twigg's discriminatory actions and comments happened over a period of multiple weeks and sometimes twice a week, and the above analysis established that Ms. Twigg knew or suspected that her conduct was unlawful. Based on this evidence, the jury was entitled to find that Ms. Twigg acted reprehensibly. *See E.E.O.C. v. Fed. Express Corp.*, 513 F.3d at 377 (finding that reprehensibility was in favor of the Plaintiff where at least three of the five factors had sufficient evidence).

As to the second guidepost, Defendant contends that a punitive award three times the amount of the compensatory award is excessive. The Court disagrees. The Supreme Court has "eschewed an approach that concentrates entirely on the relationship between actual and punitive damages." *Id.* (quoting *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 460 (1993)). The Supreme Court "has specifically declined to draw some mathematical bright line between constitutionally acceptable and unacceptable ratios." *Id.* (citing *BMW*, 517 U.S. at 582–83). The 3 to 1 ratio in this case is well below ratios that this Circuit has found to be acceptable. *See id.* at 377–78 (finding that a 12.5 to 1 ratio between the compensatory and punitive damages awards did not, as a matter of law, render the punitive damages award unconstitutionally excessive and also citing to the First Circuit that upheld a 19 to 1 ratio). Furthermore, in addition to the trouble

Plaintiff faced in finding a new job after his termination, Plaintiff testified to the harm he suffered stating that he was devastated, embarrassed, stressed, and had trouble sleeping. He testified to never being the same in the Union office after being berated by Ms. Twiggs and how he thought his colleagues no longer looked at him the same way. ECF No. 64, Transcript of Jury Trial Proceedings, at 41–54. There is sufficient evidence in the record to support the jury's verdict on punitive damages.

Finally, the last guidepost shows that this award is not different from other awards in comparable cases. *See E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360 (upholding a $100,000 punitive damage award and $8,000 compensatory damage award in an employment discrimination case based on the Americans with Disabilities Act); *see also Lowery*, 206 F.3d 431 (upholding punitive damage awards of $225,000 and $47,000 alongside $12,500 and $4,200 in compensatory damages respectively, to one of each of the Plaintiffs in an employment discrimination case based on refusal to promote on account of race). Therefore, the Court finds that the punitive damage award was not unconstitutionally excessive or contrary to justice and will deny Defendant's motion to reduce the award.

**C. Rule 50(b) and 59 Motions**

The evidence is sufficient for this Court to deny Defendant's Rule 50(b) motion for judgment notwithstanding the verdict and Rule 59 motion for a new trial. Under § 1981, a Plaintiff may establish race discrimination by proceeding under a pretext framework and demonstrating that "the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving

> the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253–54 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). Plaintiff's burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Id.* at 256. The Plaintiff may "succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* Defendant does not argue that Plaintiff has not made out a prima facie case, and Defendant has stated that Plaintiff was terminated because his work was "absorbed by the Union's permanent staff." *See* ECF No. 24 at 5.

The evidence adduced at trial, discussed above, was enough for a reasonable jury to find that Plaintiff has met his burden to establish race discrimination in violation of § 1981. In addition to hearing evidence from Plaintiff on the hostile treatment he experienced from Ms. Twiggs, the jury heard evidence that Plaintiff performed his job well and there was sufficient work to justify continued employment. Specifically, after he left, the webpage fell into disrepair; his maintenance and I.T. responsibilities were still needed; the Union had to call in an outside contractor to service the computers; and calls would come in seeking Plaintiff's assistance. ECF No. 64, Transcript of Jury Trial Proceedings, at 50–59; ECF No. 65, Transcript of Jury Trial Proceedings at 186–87. This is sufficient evidence for a reasonable jury to find that Defendant's stated reason for Plaintiff's termination, that his work was absorbed by the Union's permanent

staff, was pretextual and the true reason was discrimination. As such, the Court will deny Defendant's 50(b) and 59 motion for a new trial.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion is denied. A separate Order follows.

Date: <u>November 14, 2022</u>            /s/_____
                                           GEORGE J. HAZEL
                                           United States District Judge